J-S38043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL J. WARE | |
| Appellant | No. 2931 EDA 2015 |

Appeal from the Judgment of Sentence August 20, 2015
In the Court of Common Pleas of Wayne County
Criminal Division at No(s): CP-64-CR-0000029-2015

BEFORE:  FORD ELLIOTT, P.J.E., OLSON, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 11, 2016**

Appellant Michael J. Ware appeals from the judgment of sentence entered in the Wayne County Court of Common Pleas following his open guilty plea to three counts of involuntary manslaughter and three counts of recklessly endangering another person ("REAP").[1]  We affirm.

On August 30, 2014, Appellant allowed his unlicensed 15-year-old daughter ("J.W.") to drive his vehicle with another minor, R.A.K.  J.W. and R.A.K. subsequently picked up four teenage boys as passengers.  J.W. lost control of the vehicle on a turn and crashed.  Three of the teenage boys died as a result of the accident.

_____

[1] 18 Pa.C.S. §§ 2504 and 2705, respectively.

The trial court further provides:

> [Appellant] stood at the scene of a vehicular accident that left three teenage boys dead and told police that he did not know his underage daughter took his vehicle. Despite his daughter taking full responsibility for the accident, [Appellant] did not confess to investigating officers that he had given his underage daughter permission to drive his vehicle. It was not until two and a half months after the accident when police learned the truth. In a signed written statement from [J.W.],[2] police learned that [Appellant] had given his underage daughter permission the day of the accident to drive his vehicle with her friend. It is uncertain whether [Appellant] would eventually have divulged the truth; however, the likelihood is low based on [Appellant's] self-seeking behavior and lack of remorse.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed November 24, 2015, at 2-3.

On July 9, 2015, Appellant pled guilty to the aforementioned convictions in exchange for the seven additional charges against him being *nolle prossed*. In his written guilty plea colloquy, Appellant indicated that he understood the judge had the power to sentence him to a maximum of five years' incarceration for each of his involuntary manslaughter convictions and a maximum of two years' incarceration for each of his REAP convictions. He also indicated that he understood the judge had the power to impose his sentences consecutively, resulting in a possible aggregate sentence of 21 years' incarceration.

---

[2] The trial court indicated at sentencing that R.A.K., not J.W., incriminated Appellant.

- 2 -

On August 20, 2015, after reviewing Appellant's pre-sentence investigation ("PSI") report, a letter from Appellant, letters from Appellant's friends and family, and letters from the victims' families, the trial court sentenced Appellant to 20-40 months' incarceration for each of his involuntary manslaughter convictions and 6-24 months' incarceration for each of his REAP convictions. The court imposed the sentences consecutively, which resulted in an aggregate sentence of 78-192 months' (6½-16 years') incarceration.

On August 31, 2015, Appellant filed a motion to modify sentence,[3] which the trial court denied the same day. On September 30, 2015, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSE[D] ITS DISCRETION, AND VIOLATE[D] GENERAL SENTENCING PRINCIPLES, WHEN[] IT SENTENCED [APPELLANT], FOLLOWING A GUILTY PLEA, TO THE MANIFESTLY EXCESSIVE 20 MONTHS TO 40 MONTHS [OF] INCARCERATION ON EACH OF THREE COUNTS OF INVOLUNTARY MANSLAUGHTER TO BE SERVED CONSECUTIVELY, AND SIX MONTHS TO 24 MONTHS [OF] INCARCERATION ON EACH OF THREE COUNTS OF RECKLESSLY ENDANGERING ANOTHER PERSON TO BE SERVED CONSECUTIVELY FOR A TOTAL OF 78 MONTHS TO 192 MONTHS[' INCARCERATION]?

_____

[3] Because August 30, 2015 fell on a Sunday, Appellant's post-sentence motion, filed Monday, August 31, 2015, was timely. **See** 1 Pa.C.S. § 1908.

> WHETHER THE [TRIAL] COURT ERRED BY SENTENCING [APPELLANT] IN THE AGGRAVATED RANGE OF THE SENTENCING GUIDELINES BASED ON [APPELLANT'S] FAILURE TO COOPERATE WITH THE POLICE, WHICH IS HIS CONSTITUTIONAL RIGHT UNDER THE 5TH AMENDMENT AGAINST SELF INCRIMINATION[?]

Appellant's Brief at 5.

In his combined issues, Appellant challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by satisfying the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Id.***

Instantly, Appellant preserved his issue in a post-sentence motion, filed a timely notice of appeal and included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). ***See*** Appellant's Brief at 12. Thus, we must determine whether Appellant has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

- 4 -

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super.2011). Further:

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Id.*** (internal citations omitted).

We observe:

> a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question. ***See Commonwealth v. Moury***, 992 A.2d 162, 171–172 (Pa.Super.2010) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.")

***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa.Super.2013), *reargument denied* (Nov. 21, 2013), *appeal denied*, 91 A.3d 161 (Pa.2014) (internal citations omitted) (emphasis in original).

"[O]rdinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor *does not* raise a substantial question." ***Commonwealth v. Berry***, 785 A.2d 994, 996-97 (Pa.Super. 2001) (internal citation omitted) (emphasis in original).

However, "reliance on impermissible sentencing factors can raise a substantial question." **Dodge**, 77 A.3d at 1273 (citing **Commonwealth v. Roden**, 730 A.2d 995 (Pa.Super.1999)).

Additionally:

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

**Id.**

Appellant argues the trial court relied on unreasonable and inaccurate findings in sentencing Appellant. He claims the consecutive imposition of his aggravated range sentences resulted in an aggregate term of imprisonment that is clearly unreasonable based on the nature and circumstances of his offense. He avers the court ignored certain mitigating factors, such as Appellant's lack of intent to harm anyone and his statements that he was extremely sorry when it stated its reasons for sentencing him in the aggravated range. He further contends the court improperly considered his failure to cooperate with police in determining his sentence. Appellant's combined claims raise a substantial question for our review. Thus, we grant his petition for allowance of appeal and address the merits of his claims.

We review Appellant's sentencing claim under the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1265 (Pa.Super.2014) (*en banc*), *appeal denied,* 104 A.3d 1 (Pa.2014).

The standard range sentence for involuntary manslaughter is 6-14 months' incarceration, and the aggravated range is 20 months. The trial court sentenced Appellant to the aggravated range sentence of 20 months for each of his involuntary manslaughter convictions, and imposed the sentences consecutively with his REAP sentences, which were in the standard range. The court stated at the sentencing hearing and in its written sentencing order that its reasons for sentencing Appellant in the aggravated range was that Appellant "showed no remorse and failed to cooperate with police and lied to them." Sentence, 8/20/2015.

Appellant claims the trial court ignored his displayed remorse. He directs us to the sentencing transcript, where he stated:

> I cannot begin to say how sorry I am that three young children, Ryan, Shamus, and Cullen were lost to this world last August 30th. I will never be able to feel the loss that the families of the boys will forever feel. I can only say that hopefully today brings some form of closure for everyone affected by this horrible tragedy. Neither I [n]or my daughter, [J.W.], ever meant any harm to anyone that day. May the boys rest in peace.

N.T. Sentencing, August 20, 2015, at 27-28.

Appellant also directs us to the following, where the court later stated:

> The probation officer tells me on page 14 that the defendant was cooperative in the [PSI] and you appeared remorseful. I'll talk more about that in a while, too.

*Id.* at 30-31.

Appellant claims the trial court ignored the fact that he was remorseful when it stated that he "showed no remorse." We disagree.

At sentencing, the court explained:

> I read your account of the events that day and your two page letter to me dated August 10, 2015. Ten days before today, ten days before your sentencing. Given the facts in this case I would have thought that the first sentences in such a letter would have been, "I'm so very, very sorry for what I have done. I've set in motion the deaths of three young and vibrant men in the primes of their lives, I've caused such pain to their family, friends, and loved ones. I'm truly remorseful and take full responsibility for the deaths and pain I've caused"… Instead… you wrote… "Care for our 85 year old mom is a very difficult subject to discuss for several reasons…" Sir, I'm sorry that your mom aged and [is] suffering from infirmities, but where is your common decency to express remorse and sympathy for your victims?...
>
> The probation officer asked you how specifically you felt about this offense. This was your response to the probation officer, "It's horrible. Three lives were lost. I'm crushed. The families, it's horrible, I don't know how to say it. It's so sad I think about it daily, every waking hour." Not once did you say I'm sorry. Not once did you say I'm responsible. It was all so preventable, irresponsible, reckless, stupid, selfish, and criminal.

*Id.* at 35-36.

The record shows the trial court considered that Appellant said he was sorry and that he did not mean to cause any harm. The trial court, however, did not find Appellant took full responsibility for his actions. It further considered that Appellant lied to police officers about giving his permission to his daughter to drive the vehicle:

> Now let's talk about your lying both explicitly and implicitly. What is it within you, sir[,] that allows your 15[-] year[-]old daughter take all the blame for this horrific manslaughter? How could any parent sit [] with [his] daughter and not speak the truth when your daughter tries to protect you and says that she took the car without your knowing it. How?! How does any parent do that? What does that say about the potential of rehabilitation of you? I suggest it says a great deal.
>
> And then as if that isn't [abhorrent] enough, your daughter continues to take on the full weight of this manslaughter for 60 days, 60 days, 24 hours a day before her friend, not [J.W.], her friend, and certainly not you, tell the police the truth. You never spoke the truth and you left your daughter to bear this alone. What kind of father does this?! You denied you gave [J.W.]… that car [to take] to Dunkin Donuts. You denied you knew she took the car on this [fateful] trip. You walked out and said goodbye to them. You asked them to bring you back the bacon, egg, and cheese sandwich found at the wreck. If you lied in a situation like this, which you most certainly did, I hope you understand I do not believe a word you say.

*Id.* at 34-35.

Although Appellant claims he had a right not to incriminate himself to police officers, the transcript reveals the trial court considered specifically that Appellant let his daughter take the blame for his actions. The court was free to consider this factor in sentencing.

We do not find the trial court abused its discretion in sentencing Appellant to the aggravated range sentence or in imposing his sentences consecutively. The record reflects it considered the PSI report, Appellant's testimony and letters written by Appellant, Appellant's family and the victims' families.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016